UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMALIA (MIA) JANVIER,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF OAKLAND,<br><br>Defendant. | Case No. 22-cv-02330-SK<br><br>**ORDER TO DISMISS WITH LEAVE TO AMEND**<br><br>Regarding Docket Nos. 11, 18, 19 |

Plaintiff filed her Complaint in this matter against Defendant City of Oakland ("Defendant" or "Oakland") and twenty unknown and unnamed Doe Defendants on April 14, 2022. (Dkt. No. 1.) Defendant moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) on August 2, 2022. (Dkt. No 11.) Defendant embedded in its motion to dismiss a motion to strike and motion for more definitive statement. (*Id.*) Plaintiff filed an opposition to the motion to dismiss on August 26, 2022. (Dkt. No. 18.) Defendant filed a reply on September 1, 2022. (Dkt. No. 19.) The Court heard oral argument on the motion to dismiss on October 17, 2022. (Dkt. No. 29.) All parties have consented to the jurisdiction of the Undersigned. (Dkt. Nos. 7, 17.) Having considered the submissions of the parties, the record in the case, and the relevant legal authority, and having had the benefit of oral argument, the Court HEREBY GRANTS the motion to dismiss with LEAVE TO AMEND, for the reasons set forth below. Plaintiff's second amended complaint shall be due no later than November 15, 2022. The Court DENIES Defendant's motion to strike and Defendant's motion for a more definitive statement.

**BACKGROUND**

Plaintiff is Amalia Janvier, a Black female resident of Contra Costa County, California ("Plaintiff"). (Dkt. No. 1 ¶ 1.) Defendant is the City of Oakland, Plaintiff's former employer

("Defendant"). (*Id.* at ¶ 2.) Plaintiff also filed suit against 20 unknown and unnamed Does, who Plaintiff believes were responsible in part for the facts alleged below. (*Id.* at ¶ 3.) They are not party to the current motions.

Plaintiff was employed by Defendant as a Project Manager beginning on January 4, 2016 (Dkt. No. 11-1 at 4, Dkt. No. 1 ¶ 22.) Plaintiff has impairments including sensitivity to light, high blood pressure, and preeclampsia during pregnancy. (Dkt. No. 1 ¶ 24.) Plaintiff informed Defendant in or around 2017 of her impairments and need for accommodations. (*Id.* at ¶ 25-26.) In response, Defendant placed Plaintiff in an office with controlled lighting and no windows. (*Id.* at ¶ 26.)

On December 8, 2018, Katie Dignan became Plaintiff's supervisor. (*Id.* at ¶ 23.) In March 2019, Plaintiff requested medical accommodation through an alternative work schedule, so that she could attend appointments every other week for her preeclampsia. (*Id.* at ¶ 29.) Dignan denied this request, resulting in Plaintiff going on Family and Medical Leave Act (FMLA) leave. (*Id.* at ¶¶ 30-31.) In June or July 2019, Dignan moved Plaintiff from her lighting-controlled office to an office without controlled lighting. (*Id.* at ¶ 43.) Plaintiff alleges that the reason for this move was so that Defendant could place a "lesser ranked employee" in the office. (*Id.* at ¶ 40.) Plaintiff's union filed a cease and desist order on August 22, 2019 regarding the office change and scheduled a meeting with Plaintiff, Dignan, and Defendant's HR representatives. (*Id.* at ¶¶ 35-40.) Plaintiff states that at this meeting, held on September 18, 2019, Mary Baptist, an HR representative for Defendant, yelled out unprovoked that "[Plaintiff's] high-risk pregnancy did not entitle [Plaintiff] to anything." (*Id.* at ¶ 38.) After this meeting it is unclear whether Plaintiff was placed into an accommodating office. Plaintiff alleges she was placed in a "dirty, filthy storage room" that worsened her medical condition and that "upon her return to work" her new office was in "such a terrible state, that they had to move her" to a different office. (*Id.* at ¶¶41-42.) Defendant states that Plaintiff's new office was an accommodation office that Plaintiff determined herself was in a terrible state. (Dkt. No. 11 at 3.)

In or around November 2019, Plaintiff began experiencing pregnancy-related medical complications and requested leave to work from home full-time. Her request was denied, and she

2

went on intermittent leave beginning on November 11, 2019 and unpaid maternity leave on December 5, 2019, following a doctor's order. (Dkt. No. 1 at ¶¶43-46.)

Plaintiff states that throughout 2019, Dignan took away Plaintiff's work responsibilities and placed her on "less prestigious projects" including stocking duties. (*Id.* at ¶¶ 49-52.) Plaintiff also claims that she is the only manager without staff or interns. (*Id.* at ¶ 51.) Through this period, Plaintiff states she also was yelled at, received undeserved poor performance reviews, and oral and written reprimands, resulting in a lack of pay raise. (*Id.* at ¶¶ 54-55.)

Plaintiff additionally alleges that Defendant failed to timely respond to Plaintiff's August 15, 2019 request for premium pay benefits. (*Id.* at ¶ 83.) Plaintiff's supervisor did not respond regarding this application within the 60 calendar days stipulated by Defendant's policies but did eventually grant premium pay on December 8, 2020. (*Id.* at ¶¶ 85, 90.) Plaintiff claims she is owed premium pay as back pay starting from her hiring in 2016. (*Id.* at ¶ 91.)

Plaintiff filed an initial charge with the Equal Employment Opportunity Commission (EEOC) and California Department of Fair Employment and Housing (DFEH) against Defendant on December 21, 2019, alleging the facts stated above and claiming these actions were due to race, national origin, sex, and disability discrimination and retaliation. (Dkt. No. 11-1 at 4-5.) Plaintiff received a notice of right-to-sue from the DFEH on January 13, 2020. (Dkt. No. 1 ¶ 12.) Plaintiff received a notice of right-to-sue from the EEOC on or about March 29, 2021, and the parties tolled the filing deadline to April 15, 2022. (Dkt. No. 1 ¶ 14.) Following this initial EEOC/DFEH charge, Plaintiff states that her requests to schedule her "Baby Bonding leave" were ignored by her supervisor from February 10, 2020, until at least March 6, 2020. (*Id*. at ¶¶ 65-78.) This resulted in at least one delay in Plaintiff's paychecks. (*Id.* at ¶¶ 74, 78.) Also following this charge, Plaintiff states she continued to receive underserved poor performance reviews resulting in a lack of salary raise and was denied a promotion. (*Id.* at ¶¶ 95-101, 116-119.)

Plaintiff filed a second EEOC and DFEH charge on November 24, 2020, alleging retaliation after filing her first charge. (Dkt. No. 11-1 at 9.) Plaintiff states she received a notice of right-to-sue on this 2020 charge but does not specific the date. (Dkt. No. 18 at 3.) Following Plaintiff's second filing with the EEOC for retaliation, Plaintiff alleges that she continued to face

retaliation and discrimination. (Id. at ¶ 124.) Plaintiff's supervisors denied her leave to work from home to take care of her sick husband (*id.* at ¶125.) and denied her request to transfer departments. (*Id.* at ¶ 130-132.)

Defendant fired Plaintiff on April 1, 2022. (*Id.* at ¶ 136.) Plaintiff filed a Complaint of Discrimination with the DFEH, on July 25, 2022. (Dkt. No. 18-1.) Plaintiff received a notice of right-to-sue from the DFEH on July 25, 2022. (*Id*.)

## ANALYSIS

### A.     Motion to Dismiss: 12(b)(6).

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. On a motion to dismiss under Rule 12(b)(6), the Court construes the allegations in the complaint in the light most favorable to the non-moving party and takes as true all material allegations in the complaint. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Rather, a plaintiff must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Lieche, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

Generally, "a district court may not consider material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other*

4

*grounds, Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted). However, documents subject to judicial notice, such as matters of public record, may be considered on a motion to dismiss. See Harris v. Cnty of Orange, 682 F.3d 1126, 1132 (9th Cir. 2011). In doing so, the Court does not convert a motion to dismiss to one for summary judgment. See *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991). "The court need not . . . accept as true allegations that contradict matters properly subject to judicial notice . . . ." *Sprewell v. Golden State Warriors*, 266 F. 3d 979, 988 (9th Cir. 2001).

### 1. Plaintiff's Claim for Discrimination under 42 U.S.C. § 1981

For Plaintiff to make a prima facie showing of a § 1981 claim for discrimination, she must show that she was discriminated against and subjected to a hostile work environment or discriminated in the "benefits, privileges, terms and conditions" of her employment due to her race. *Thinket Ink Info. Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004) (internal citations and quotations omitted). Although Title VII is a distinct suit, "both require proof of discrimination and the same set of facts can give rise to both claims." *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 850 (9th Cir. 2004). Further, both claims require "proof of intentional discrimination." *Lowe v. City of Monrovia*, 775 F.2d 998, 1010 (9th Cir. 1985), amended, 784 F.2d 1407 (9th Cir. 1986). A defendant will not be liable if it has a legitimate, nondiscriminatory purpose for their adverse employment action, unless these were pretextual. *See Taylor v. AFS Techs. Inc.*, 503 F. App'x 531 (9th Cir. 2013); *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640–42 & n. 5 (9th Cir. 2003) (listing elements of a discrimination claim under Title VII and explaining that circumstantial evidence of pretext must be specific and substantial); *Comcast Corp. v. Nat'l Ass'n of African Am. Owned Media*, 140 S.Ct. 1009. 1019 (2020) ("To prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right.")

Plaintiff must also plead municipal liability in order to bring an § 1981 claim against a city. *See Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1215 (9th Cir. 1996) (finding that Congress intended the traditional "policy or custom" requirement set forth in *Monell*

5

to apply to § 1981 claims). Defendant here may not be held responsible for the acts of its employees under a respondeat superior theory of liability. *Bd. Of City. Comm'rs v. Brown*, 520 397, 403 (1997). Specifically, "[l]ocal governing bodies (and local officials sued in their official capacities) can, therefore, be sued directly. . . where, as here, the action that is alleged to be unconstitutional implements or executes *a policy statement, ordinance, regulation, or decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy*." *Monell v. Dept. of Soc. Services of City of New York*, 436 U.S. 658, 659 (1978) (emphasis added).

Plaintiff has failed to allege facts to support *Monell* liability. Plaintiff's sole allegation is the conclusory statement that "Ms. Janvier's supervisors were 'officials with final policy-making authority'… and their illegal acts created illegal customs, practice, and policies based on race." (Id. at ¶ 143.)

Pursuant to Federal Rule of Civil Procedure 15(a)(2), leave to amend may be freely given when justice so requires. "This policy is 'to be applied with extreme liberality.'" *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). The decision about whether to grant amendment rests within the sound discretion of the trial court. *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). In considering whether amendment is warranted, courts consider whether factors such as undue delay, bad faith or dilatory motive on the part of the movant, failure to cure by repeated amendment, or undue prejudice to the opposing party are at play. *Eminence*, 316 F.3d at 1052. In this analysis, "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.*

Here, Plaintiff has not yet amended her complaint and has not begun the discovery process. Defendant has not shown that amending the complaint would lead to undue prejudice to them and have in fact moved for a more definitive pleading pursuant to Fed. R. Civ. P. 12(e). For this reason, the Court GRANTS the motion to dismiss this claim WITH LEAVE TO AMEND.

**2.     Plaintiff's Claim for Retaliation under 42 U.S.C. § 1981**

To make out a claim for retaliation under § 1981, a Plaintiff "must prove that (1) she

6

engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two." *Surrell v. Cal. Water Service Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008). An EEOC and DFEH charge alleging racial discrimination complaint can be a protected activity for the purposes of § 1981. *Shahrivar v. City of San Jose*, 752 Fed.Appx. 415, 419 (9th Cir. 2018). The Ninth Circuit has found that an adverse employment action exists if it "is reasonably likely to deter employees from engaging in protected activity. *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000). As examples of protected activity, the court has listed "termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). Comparatively, the court found that it was not adverse action to "decline hold a job open for an employee and badmouth[] an employee outside the job reference context." *Id.* at 929. A causal connection can be found between a protected activity and adverse employment action "based on the timing of the relevant actions. Specifically, when adverse employment decisions are taken within a reasonable period after complaints of discrimination have been made, retaliatory intent may be inferred." *Id.* (quoting *Passantino v. Johnson & Johnson Consumer Prods.*, Inc., 212 F.3d 493, 507 (9th Cir. 2000)).

Similar to a § 1981 discrimination claim, to make out a § 1981 retaliation claim against a municipality, a plaintiff must allege *Monell* liability.

Plaintiff has demonstrated that she engaged in protected activity by filing her initial EEOC/DFEH claims, which mention discrimination on the basis of race. (Dkt. No. 11-1 at 5). Further, Plaintiff has shown that she suffered adverse employment actions in the form of delayed paychecks, delayed premium pay, lack of promotion, and a failure to obtain a raise. However, Plaintiff has not fully pled a causal connection between the retaliatory actions and her protected actions. Although some of these alleged retaliatory actions took place in the months after Plaintiff filed her EEOC/DFEH charge, many of these acts such as the "undeserved poor performance appraisals" and moving Plaintiff to a non-compliant office, predated Plaintiff engaging in protected activity. (Dkt. No. 1 at 6.) Further, these earlier poor performance reviews may be tied to Plaintiff's lack of raise or promotion. Plaintiff is directed to specifically address each element

of a retaliation claim, and to plead additional facts demonstrating a causal connection between Plaintiff's protected activity and Defendant's retaliation.  Furthermore, similar to her § 1981 discrimination claim, Plaintiff has not demonstrated *Monell* liability here.  Thus, the Court GRANTS the motion to dismiss this claim WITH LEAVE TO AMEND.

### 3. Plaintiff's Claim for Retaliation under 42 U.S.C. § 1983

Plaintiff alleges that Defendant deprived her of "certain rights, including but not limited to those secured under Title VII and First Amendment" but does not specify any greater detail as to what actions the city took or exactly what rights were deprived.  (Dkt. No. 1 at ¶¶ 160-167).  Under Section 1983, Plaintiffs may sue if they suffered a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  Violations of federal statutes may serve as the basis of 1983 suits, so long as Congress did not "specifically foreclose[] a remedy under § 1983", and the statute created "rights, privileges, or immunities.".  *Maine v. Thiboutot*, 448 U.S. 1, 1 (1980) (holding that violations federal statutes can serve as the basis for the § 1983 suits); *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106 (1989) (discussing Defendant's right to demonstrate that Congress foreclosed a remedy.)

Title VII may not be the basis for bringing a retaliation claim under § 1983, as courts have found that Congress made Title VII the exclusive remedy for employment discrimination.  *Haynes v. City and County of San Francisco*, CV 13-1567 MEJ, 2013 WL 3456932, at *4 (N.D. Cal. July 9, 2013); *Deputee v. Lodge Grass Pub. Schools*, CV 15-82-BLG-SPW, 2016 WL 676363, at *4 (D. Mont. Feb. 18, 2016) (citing *Henley v. Brown*, 686 F.3d 634, 642 (8th Cir. 2012)) ("plaintiff cannot use § 1983 as a vehicle to vindicate statutory rights created by Title VII.")  However, where an employer's conduct violates rights secured by the Constitution, Plaintiff may assert a simultaneous § 1983 claim for that Constitutional violation based on the same nexus of facts.  *Haynes,* 2013 WL 3456932, at *4 ("an employment discrimination plaintiff asserting a violation of a constitutional right may bring suit under both Title VII and § 1983, even if the claims arise from the same factual allegations"); *Deputee.*, 2016 WL 676363, at *4 (Title VII does not preclude a separate action under § 1983 for gender discrimination); *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 986 (8th Cir.2011) (explaining that "[a]lthough section 704(a) of Title VII may not be

8

1    the basis for a retaliatory discharge claim in a § 1983 action, § 1983 provides a vehicle for
2    redressing claims of retaliation on the basis of the First Amendment") (internal quotation marks
3    and citation omitted); *Hervey v. City of Little Rock*, 787 F.2d 1223, 1233 (8th Cir.1986) (stating an
4    employment discrimination plaintiff may recover under § 1983 through the Fourteenth
5    Amendment); *but see Gao v. Hawaii Dep't of Atty. Gen*., No. CV 09-00152DAE-LEK, 2009 WL
6    2849140, at *4 (D. Haw. Sept. 2, 2009) ("Second, at least two of Plaintiff's section 1983 claims,
7    'illegal employment discrimination' and 'non-discriminatory state employment' are barred
8    because of the comprehensive remedial scheme available under Title VII. Plaintiff asserts the
9    same facts and broad allegations for this section 1983 as for his Title VII claim.").  Plaintiff cannot
10   assert a § 1983 suit on the basis of Title VII and is directed to consider other Constitutional bases
11   for her suit.

12   Here, Plaintiff alleges that she suffered relation for exercising her First Amendment rights
13   to free speech.  To analyze a First Amendment retaliation claim, a court must evaluate: (1)
14   whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a
15   private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or
16   motivating factor in the adverse employment action; (4) whether the state had an adequate
17   justification for treating the employee differently from other members of the general public; and
18   (5) whether the state would have taken the adverse employment action even absent the protected
19   speech." *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).  Regarding the first prong of this
20   test, speech involves a matter of public concern when it can fairly be considered to relate to any
21   matter of political, social, or other concern to the community. *Johnson v. Multnomah County*, Or.,
22   48 F.3d 420, 422 (9th Cir. 1995).

23   Regarding the First Amendment retaliation claim, Plaintiff has not addressed the five
24   factors listed above, but based on the fact that she made an EEOC/DFEH claim as a public
25   employee, this may qualify as a speaking on a matter of public concern as a public employee,
26   satisfying both prongs one and two. To adequately plead a § 1983 claim, Plaintiff is directed to
27   fully address each element of the *Eng* test.

28   In order to bring a § 1983 suit against a municipality, a plaintiff must show *Monell* liability

1  as a baseline. *See generally Monell*, 436 U.S. at 690-95 (1978). Here again, Plaintiff has not pled
2  any factual allegations regarding any specific City policy, custom, or practice that would satisfy
3  *Monell* liability for her § 1983 claims. Thus, the Court GRANTS the motion to dismiss this claim
4  WITH LEAVE TO AMEND.

   **4.     Plaintiff's Claims for Discrimination and Retaliation Claims under 42 U.S.C. § 2000e-2 *et seq.* (Title VII)**

Plaintiff alleges Defendant violated Title VII on the basis of discrimination – through disparate treatment and a hostile work environment – and retaliation. To establish a case of discrimination based on disparate treatment under Title VII, Plaintiff must show: "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004). To establish discrimination on the basis of a hostile work environment based on race or sex under Title VII, plaintiff must show: "(1) that he was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003), as amended (Jan. 2, 2004).

Plaintiff has not adequately pled that she was subject to disparate treatment. In her complaint, Plaintiff does not give facts related to what her position is or how she was qualified for her position, nor does she explain in adequate detail how similarly situated individuals outside he protected class were treated. Plaintiff's only allegation related to disparate treatment was that she was the only manager without any staff or interns. (Dkt. No. 1 at ¶ 51.) To adequately plead disparate treatment under Title VII, Plaintiff must allege facts satisfying all four elements of the claim.

Plaintiff has also not demonstrated that she was discriminated against on the basis of a hostile work environment. None of the adverse employment actions she mentions were of a racial

or sexual nature, except the comment related to her high-risk pregnancy. (*Id.* at ¶¶35-40.) Further, she has not shown that comments like these were severe or pervasive.

To analyze a Title VII retaliation claim, the Court is guided by a similar analysis as stated above for retaliation under §1981. Namely, "[t]o make out a prima facie case of retaliation [under Title VII], an employee must show that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000)).

Plaintiff has not stated a claim for Title VII retaliation (see § 1981 Retaliation discussion, *supra*) and is directed by the court to ensure she shows causality between her protected action and Defendant's retaliatory acts.

Finally, filing a Title VII claim generally requires exhaustion of administrative remedies, including filing a charge with the EEOC and receiving a right-to-sue letter. *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1104 (9th Cir. 2008). Generally, it is not fatal to a case if a plaintiff has not received this right-to-sue letter from the EEOC, as long as the plaintiff has received one from "the appropriate state agency," are entitled to one, and "obtain one before trial." *Adetuyi v. City and County of San Francisco*, 63 F. Supp. 3d 1073, 1082 (N.D. Cal. 2014) (internal citations and quotations omitted). *Monell* liability is not necessary for a Title VII suit. *Trulsson v. County of San Joaquin*, 2:11-CV-02986-KJM, 2013 WL 4737203, at *6 (E.D. Cal. Sept. 3, 2013) (for a Title VII claim "*Monell* is irrelevant.")

Plaintiff has partially exhausted her administrative remedies. She received a right-to-sue letter from the EEOC and FEHA regarding her 2019 charge. (Dkt. No. 1 ¶ 12.) However, Plaintiff's most robust retaliation allegations are contained in her 2020 and 2022 Administrative charges. Plaintiff is directed to supply the court with proof of her right-to-sue letter for her 2020 EEOC/FEHA charge. Plaintiff only filed her 2022 charge after filing her Complaint with this court. As such, facts alleged exclusively in her 2022 charge cannot be considered for the purposes of this motion, but these facts could be incorporated into an amended complaint as Plaintiff now has a right-to-sue letter from FEHA. Thus, the Court GRANTS the motion to dismiss this claim WITH LEAVE TO AMEND.

///

### 5. Plaintiff's Claims for Discrimination and Retaliation Claims 42 U.S.C. § 12111 *et seq.* (ADA)

To state a claim for discrimination under the ADA, a plaintiff must allege: "(1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). The ADA defines a disability as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2) (2009). However, Congress has clarified that "t]he definition of disability in [the ADA] shall be construed in favor of broad coverage of individuals under [the ADA], to the maximum extent permitted by the terms of [the ADA]" *Shields v. Credit One Bank*, N.A., 32 F.4th 1218, 1223 (9th Cir. 2022) (quoting 42 U.S.C. § 12102(4)). This is an "individualized inquiry," that requires consideration of the "nature and severity of the impairment" and the duration of the impairment. *Foster v. City of Oakland*, 649 F. Supp. 2d 1008, 1016 (N.D. Cal. 2009). The Northern District of California further states that a *qualified person* pursuant to the second prong of an ADA discrimination suit "is one with a disability who, with or without reasonable accommodation, can perform the essential functions of the job the individual holds." *Id. at* 1018. Finally, "[a]n employee bears the burden of proving that he was discriminated against "because of" a disability." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 994 (9th Cir. 2007)

Plaintiff has not adequately claimed discrimination under the ADA. Plaintiff has demonstrated to the Court that she is an individual with a disability for the purposes of the ADA, but is directed to further state how her disabilities "substantially limit" her major life activities. (Dkt. No. 1 at ¶ 24.) (stating Plaintiff has "sensitivity to light, high blood pressure, and

12

preeclampsia during pregnancy"); *see Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 517 (1999) (finding that Plaintiff was not "disabled because of his high blood pressure" since he was able to have it treated medically and he could not show it substantially impaired him). However, Plaintiff has not demonstrated through fact pleading that she was discriminated against *because of* her disability.

Retaliation claims under the ADA closely resemble those under § 1981 and Title VII. "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Plaintiff has not adequately pled retaliation under the ADA because it is not clear when she made a request for accommodations or challenged her accommodations and when the alleged retaliatory act occurred. Here, Plaintiff made allegations of disability discrimination against Defendant both in her union meeting, and in her EEOC/DFEH charges. (Dkt. No. 1 at ¶35-40.) Based on the pleadings, it is not clear which acts Plaintiff claims were made in retaliation for her complaints. Thus, the Court GRANTS the motion to dismiss this claim WITH LEAVE TO AMEND.

**6.     Plaintiff's Claims for Discrimination and Retaliation under 42 U.S.C. § 12940 (FEHA)**

For Plaintiff to establish a prima facie case of disability discrimination under FEHA, Plaintiff must demonstrate "(1) he suffered from a disability, (2) he could perform the essential duties of his job with or without reasonable accommodation, and (3) he was subjected to adverse employment action because of his disability." *McInteer v. Ashley Distrib. Services, Ltd.*, 40 F. Supp. 3d 1269, 1281 (C.D. Cal. 2014). Discrimination under FEHA does not apply to harassment and is instead a narrower charge:

> FEHA's discrimination provision addresses only explicit changes in the "terms, conditions, or privileges of employment." In the case of an institutional or corporate employer, the institution or corporation itself must have taken some official action with respect to the employee, such as hiring, firing, failing to promote, adverse job assignment, significant change in compensation or benefits, or official disciplinary action.

13

1  *Roby v. McKesson Corp.*, 219 P.3d 749, 761 (Cal. 2009), as modified (Feb. 10, 2010) (internal
2  citations omitted).
3        Plaintiff has not established a prima facie case of disability discrimination under FEHA.
4  As discussed in Section A(5), *supra*, Plaintiff has not sufficiently alleged that she was
5  discriminated against because of a disability.
6        For retaliation to be actionable under FEHA, a plaintiff must show "(1) he or she engaged
7  in a protected activity, (2) the employer subjected the employee to an adverse employment action,
8  and (3) a causal link existed between the protected activity and the employer's action." *Yanowitz v.*
9  *L'Oreal USA*, Inc., 116 P.3d 1123, 1130 (Cal. 2005); Cal. Gov. Code §12940(h) (internal citations
10 and quotations omitted).  This standard mirrors the standard for retaliation under § 1981, and Title
11 VII, and as discussed in Sections A(2) and A(3), *supra*, Plaintiff has not made out a prima facie
12 case of retaliation.  Thus, the Court GRANTS the motion to dismiss this claim WITH LEAVE TO
13 AMEND.
14 **B.**    **Motion to Dismiss: 12(b)(1)**
15       A complaint may be dismissed for lack of subject matter jurisdiction under Federal Rule of
16 Civil Procedure 12(b)(1).  When a defendant asserts Rule 12(b)(1) as a facial challenge to a
17 complaint, the defendant argues "that the allegations contained in a complaint are insufficient on
18 their face to invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039
19 (9th Cir. 2004).  Defendant brings a motion to dismiss Plaintiff's FEHA (§ 12940) for failure to
20 exhaust administrative remedies and argues that Plaintiff was "silent on her exhaustion of
21 administrative remedies."  (Dkt. No. 11 at 27); *see Okoli v. Lockheed Technical Operations Co.*,
22 36 Cal.App.4th 1607, 1613 (1995) ("the failure to exhaust an administrative remedy is a
23 jurisdictional, not a procedural, defect.") (internal citations omitted).
24       In order to file a lawsuit under FEHA, a Plaintiff must first receive a right-to-sue letter
25 from the DFEH.  *Dornell v. City of San Mateo*, 19 F. Supp. 3d 900, 905 (N.D. Cal. 2013).  Where
26 an EEOC right-to-sue letter is not issued until after a complaint is filed, the failure may not bar the
27 case, provided that the state agency has provided a right-to-sue and the EEOC letter will be
28 obtained before trial.  *Adetuyi v. City and County of San Francisco*, 63 F. Supp. 3d 1073, 1082

(N.D. Cal. 2014)

Plaintiff has effectively exhausted her administrative remedies as they pertain to her discrimination claims. Plaintiff states that she had already been granted a right-to-sue from both the DFEH and EEOC in regard to her initial 2019 charge, at least permitting her to sue on the basis of the allegations contained within this charge. (Dkt. No. 1 ¶¶ 12, 14.) Defendant argues that Plaintiff's EEOC/DFEH charges do not mention any specific facts related to racial, national origin or sex discrimination and do not make reference to Plaintiff's disabilities. (Dkt. No. 11 at 27.) This is not accurate. Plaintiff's 2019 EEOC/DFEH claim states that Plaintiff has disabilities, that Defendant's employees "violated [her] restrictions" and failed to provide accommodations. (Dkt. No. 11-1 at 4.) Further, Plaintiff states that she believed the basis of her discrimination was due to National Origin, Race, Sex, and Disability. (*Id*.)

However, Plaintiff may not have exhausted her administrative remedies pertaining to her retaliation claims. Based on the briefing, it is unclear when Plaintiff received a right-to-sue letter based on her 2020 charge. Further, Plaintiff's 2022 right-to-sue letter from FEHA only arrived after she filed her complaint. As such, Plaintiff may be administratively barred from charging facts related to these two charges, depending on the right-to-sue letter date from her 2020 charge.

As all claims have been dismissed with leave to amend independently under 12(b)(6), Plaintiff will have an opportunity to file an amended complaint and ensure that administrative remedies are fully satisfied. In the case of refiling, Plaintiff is directed to explicitly state whether she has exhausted administrative remedies in regard to any ADA or FEHA claims and ensure that right-to-sue letters are issued before an amended complaint is filed.

Defendant's Motion to Dismiss Plaintiff's Claims under 12(b)(1) is GRANTED in PART in regard to facts specific to Plaintiff's 2022 EEOC charge and DENIED in PART in regard to all other fact allegations. Plaintiff is GRANTED leave to amend.

**C.     Motion to Strike**

Defendant's Motion to Strike is DENIED. Defendant supplied no briefing on their Motion to Strike.

**D.     Motion for More Definitive Statement**

15

Under Federal Rule of Civil Procedure 12(e), a court can grant a motion for more definitive statement if the pleading is so vague or ambiguous that the party cannot reasonably prepare a response. The moving party must point out the defects in the complaint and the details desired.

Defendant argues that Plaintiff's Complaint is vague and ambiguous and highlight points of confusion, factual inconsistencies, omissions of fact, and unknown dates throughout the Complaint. (See Dkt. No. 11 at 9, 11.) The Court agrees that Plaintiff's Complaint is at times ambiguous and omits key facts such as Plaintiff's former job title, her work duties, and details as to her disabilities. However, because the Court is granting leave to amend the claims, the motion for a more definitive statement is DENIED as MOOT.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Defendant's motion to dismiss, with LEAVE TO AMEND. Plaintiff's second amended complaint shall be due no later than November 15, 2022. The Court DENIES Defendant's motion to strike. The Court DENIES Defendant's motion for more definitive statement. The Court DISMISSES the Doe Defendants and GRANTS LEAVE TO AMEND to name Doe Defendants by November 15, 2022.

**IT IS SO ORDERED**.

Dated: October 25, 2022

SALLIE KIM
United States Magistrate Judge